**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* Subpoenas to Adam Kincaid and the National Republican Redistricting Trust | Case No.: _____ |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | *Underlying Action* <br><br> In the United States District Court for the Western District of Texas <br><br> Case No.: 3:21-cv-00259-DCG-JES-JVB |

### NON-PARTIES ADAM KINCAID AND THE NATIONAL REPUBLICAN REDISTRICTING TRUST'S MOTIONS TO QUASH AND FOR PROTECTIVE ORDERS

Pursuant to Federal Rules of Civil Procedure 26 and 45, non-parties Adam Kincaid and the National Republican Redistricting Trust ("NRRT") (collectively "Movants"), move this Court to quash the Mexican American Legal Defense and Educational Fund, Inc.'s ("MALDEF") deposition subpoena to Mr. Kincaid, or, in the alternative, to issue a protective order limiting the scope and timing of his deposition, and to issue a protective order limiting the scope and timing of the deposition subpoena to NRRT. A memorandum of law supporting this Motion follows.

Pursuant to D.C. District Court Rule 7(m), undersigned counsel for Movants conferred with counsel for MALDEF and requested that the subpoena to Mr. Kincaid be withdrawn and that MALDEF limit the scope of the topics provided in the subpoena to NRRT. MALDEF demonstrated an effort to work with Mr. Kincaid and NRRT in good faith—such as offering to

hold both depositions on the same day and expressing a willingness to narrow the scope of certain

requests—but ultimately the parties could not agree on key points.


Respectfully submitted,                                   DATED: July 12, 2022

<u>/s/ Jason Torchinsky</u>
Jason Torchinsky (D.C. Bar No. 976033)
John J. Cycon
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Phone: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Non-Parties the National Republican*
*Redistricting Trust and Adam Kincaid*

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE WITH PLAINTIFF</u>

Pursuant to Federal Rule of Civil Procedure 26(c)(1), counsel for Mr. Kincaid and NRRT conferred with counsel for MALDEF and requested that the subpoena to Mr. Kincaid be withdrawn and that MALDEF limit the scope of the topics provided in the subpoena to NRRT. MALDEF demonstrated an effort to work with Mr. Kincaid and NRRT in good faith—such as offering to hold both depositions on the same day and expressing a willingness to narrow the scope of certain requests—but ultimately the parties could not agree on key points.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was emailed to the Clerk of the Court at DCD_CMECF@dcd.uscourts.gov on July 12, 2022. Plaintiffs' counsel and Defendants' counsel were served electronically on July 12, 2022.

<u>/s/ Jason Torchinsky</u>
Jason Torchinsky (D.C. Bar No. 976033)
jtorchinsky@holtzmanvogel.com
John J. Cycon
jcycon@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Phone: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Non-Parties the National Republican
Redistricting Trust and Adam Kincaid*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| *In re* Subpoenas to Adam Kincaid and the National Republican Redistricting Trust | Case No.: _____ |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>GREG ABBOTT, et al.,<br><br>Defendants. | *Underlying Action*<br><br>In the United States District Court for the Western District of Texas<br><br>Case No.: 3:21-cv-00259-DCG-JES-JVB |

<u>**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES ADAM KINCAID AND THE NATIONAL REPUBLICAN REDISTRICTING TRUST'S MOTIONS TO QUASH AND FOR PROTECTIVE ORDERS**</u>

Jason Torchinsky (D.C. Bar No. 976033)
John J. Cycon
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Phone: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Non-Parties the National Republican Redistricting Trust and Adam Kincaid*

## INTRODUCTION

Redistricting cases are uniquely challenging when it comes to discovery. The same organizations often challenge maps in multiple states under similar theories. The Democratic and Republican Parties, as associations and on behalf of their members, have unparalleled interests in the outcomes, which often implicate the heart of the First Amendment to the United States Constitution. Those involved in the actual redistricting process know it is almost certain they will be brought into litigation, which frequently involves the same attorneys and law firms. In fact, several of the key players from the underlying and related cases have battled each other for decades. Due to this novel background, there are perverse incentives to stretch the Federal Rules of Civil Procedure to their breaking points.

Take, for instance, a typical case involving proprietary, confidential, or otherwise trade secret information. A common example occurs when a company in a lawsuit seeks to prevent disclosing information that gives it a competitive advantage, and which would hurt the company if that information became public. In response, courts frequently implement protective orders that shield the information while balancing the interests in broad discovery. But that is often impossible in the redistricting context. The same lawyers who litigate maps in various states frequently advise others about their creation and alteration over multiple cycles. Unlike the general trade secret example, where an attorney would have no real opportunity to use the trade secret, in redistricting a fact learned in one case has the potential to benefit a firm or organization in a multitude of current or future cases across the country. That's not to say that any attorney or party has acted or will act improperly; rather, it's an illustration of the unique concerns at issue in this case.

The Mexican American Legal Defense and Educational Fund, Inc. ("MALDEF") served Mr. Adam Kincaid with a deposition subpoena on June 30, 2022 and served the National

Republican Redistricting Trust ("NRRT") with a deposition subpoena on July 1, 2022.[1] Mr. Kincaid is the Executive Director of NRRT. Kincaid Decl. ¶ 3. This Court should quash the subpoena to Mr. Kincaid as, at best, it is duplicative and cumulative of the subpoena to NRRT. At worst, it is an opportunity to conduct an improper fishing expedition designed to harass Mr. Kincaid and frustrate his participation in the redistricting process—both in his individual capacity and on behalf of NRRT and its constituents. In the alternative, this Court should issue a protective order limiting the topics of Mr. Kincaid's deposition to those specified in MALDEF's 30(b)(6) topics provided to NRRT—subject to any modifications by this Court—which would prevent inappropriate questioning. Likewise, this Court should limit the 30(b)(6) topics to prevent improper inquiry into privileged and otherwise protected information. Finally, Movants ask this Court to prohibit MALDEF from re-noticing either deposition until any discovery disputes between Plaintiffs and The Gober Group are resolved.

## STATEMENT OF THE CASE

The 87th Texas Legislature approved redistricting plans for the Texas House, Senate, and the Texas State Board of Education on October 15, 2021 and October 16, 2021, and it approved the plan for Texas's congressional districts on October 18, 2021. *LULAC v. Abbott*, No. 3:21-cv-00259-DCG-JES-JVB, (W.D. Tex. June 13, 2022) (ECF 338, LULAC's Third Amended Complaint)[2] ¶ 6. Also on October 18, 2021, the League of United Latin American Citizens ("LULAC") and others filed a Complaint for Declaratory and Injunctive Relief against Governor

---

[1] The June 30, 2022 subpoena to Mr. Kincaid is appended as Exhibit A, and the July 1, 2022 subpoena to NRRT is appended as Exhibit B. Mr. Kincaid, NRRT, and MALDEF subsequently agreed to set both depositions for July 13, 2022, and later agreed that the depositions would be postponed, and appearances excused, pending this Court's ruling on these motions.

[2] All "ECF" citations are to *LULAC v. Abbott*, No. 3:21-cv-00259-DCG-JES-JVB (W.D. Tex.).

Greg Abbott and others. (ECF 1, LULAC's Complaint). On November 11, 2021, a three-judge panel in the United States District Court for the Western District of Texas consolidated *LULAC v. Abbott* with six other cases, with *LULAC v. Abbott* becoming the lead case. (ECF 16, Order Granting Motion To Consolidate Cases).

On June 13, 2022, LULAC filed its Third Amended Complaint for Declaratory and Injunctive Relief. (ECF 338, LULAC's Third Amended Complaint). Essentially, Plaintiffs allege that "[a]ll four statewide redistricting plans enacted in 2021 discriminate—purposefully and in effect—against Latino voters in violation of the federal Voting Rights Act and the U.S. Constitution." *Id.* at ¶ 7. Plaintiffs therefore seek declaratory judgments that the Texas House, Texas Senate, Texas State Board of Education, and Texas congressional plans "violate their civil rights because the plans unlawfully dilute the voting strength of Latinos," and that they "intentionally discriminate against them on the basis of race and national origin." *Id.* at ¶ 8. Plaintiffs also request a declaratory judgment that the Texas House plan is unconstitutionally malapportioned. *Id.* As relief, "Plaintiffs seek a permanent injunction prohibiting the calling, holding, supervising, or certifying of any future Texas House, Senate, Congressional and [State Board of Education] elections under the newly enacted redistricting plans," and also seek the creation of new "plans that will not cancel out, minimize or dilute the voting strength of Latino voters in Texas." *Id.* Finally, Plaintiffs request "an order subjecting Texas to the preclearance requirement of section 5 of the Voting Rights Act . . . [and] costs and attorney's fees." *Id.*

On June 10, 2022, MALDEF served Mr. Kincaid and NRRT with nearly identical document subpoenas.[3] Exhibit C (Document Subpoena to Adam Kincaid); Exhibit D (Document

---

[3] On May 24, 2022, MALDEF served almost identical subpoenas to those served on June 10. Those subpoenas were ineffective, however, as they violated FED. R. CIV. P. 45(c)(2)(A). Mr.

Subpoena to NRRT). On June 23, 2022, Mr. Kincaid and NRRT submitted responses and objections, noting, *inter alia*, that the Requests were overbroad and unduly burdensome.[4] Exhibit E (Kincaid's Responses & Objections); Exhibit F (NRRT's Responses & Objections). Additionally, the responses and objections reminded MALDEF of its obligation that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* at 4 n.3 (quoting FED. R. CIV. P. 45(d)(1)).

On June 30, 2022, MALDEF served Mr. Kincaid with a deposition subpoena. Exhibit A (Deposition Subpoena to Adam Kincaid). The subpoena did not include a list of topics. *Id.* On July

---

Kincaid and NRRT maintain that the June 10 subpoenas are similarly ineffective, but that issue is not before this Court. *See* Exhibit E (Kincaid's Responses & Objections) at 1–2 & n.1.

[4] For example, Request 5 seeks "[a]ll documents relating to redistricting for the Texas House, the Texas Senate, the State Board of Education or the Texas delegation to the U.S. House of Representatives exchanged between, among or with you and the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, any State Board of Education member or their staff, the House Committee on Redistricting or any member or staff thereof, the Senate Special Committee on Redistricting or any member or staff thereof, the Conference Committee regarding Senate Bill 6 or any member or staff thereof, the Texas Legislative Council, any member of the U.S. House of Representatives or their staff, any candidate to represent Texas in the U.S. House of Representatives or their staff, any candidate for the Texas House or their staff, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any candidate for the Texas Senate or their staff, any campaign for the Texas Senate, any candidate for the State Board of Education or their staff, any campaign for the State Board of Education, the Gober Group, On Message Inc., any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any member of the faculty of a college or university, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public." Exhibit C (Document Subpoena to Adam Kincaid) ¶ 5.

1, 2022, MALDEF served NRRT with a deposition subpoena listing ten topics. Exhibit B

(Deposition Subpoena to NRRT). Topics 1–3 are:

1.      The creation, editing, or review of draft or final versions of documents—including but not limited to tables, reports, and redistricting maps—detailing or reflecting any boundary changes to Texas congressional districts, Texas House of Representatives districts, Texas Senate districts, or Texas State Board of Education districts, whether or not those versions resulted in any proposals during the 87th Texas Legislature in 2021, between the dates of January 1, 2021 and October 25, 2021.

2.      Research, evaluation, or analysis conducted by NRRT related to the characteristics (demographic, political, or otherwise) of voters in Texas or voters moved into or out of any district for Texas House of Representatives, Texas Senate, Texas State Board of Education, or Texas seats in the U.S. House of Representatives in any redistricting proposals seen by NRRT between January 1, 2021 and October 25, 2021.

3.      The discussion, conception, development, or execution of any strategy or plan to alter the boundaries of any district for Texas House of Representatives, Texas Senate, Texas State Board of Education, or Texas seats in the U.S. House of Representatives between January 1, 2021 and October 25, 2021.

*Id.* at 5. Topic 1 also contains the following footnote:

This area includes work done by any past or current NRRT staff, any past or current member of the Texas House of Representatives or their current or former staff, any past or current member of the Texas Senate or their current or former staff, any past or current member of the Texas State Board of Education or their current or former staff, any past or current member of the Texas delegation of the U.S. Congress or their current or former staff, or any Texas executive branch official or their current or former staff, including but not limited to Governor Greg Abbott and Lieutenant Governor Dan Patrick. This area also includes any work done by any campaign for elected office for any of the aforementioned individuals, or any such campaign's current or former staff.

*Id.* at 5 n.1. Topics 4–7 involve "[t]he purpose or intent underlying the boundaries" of each

of the four maps, and Topic 8 centers on "[t]he release of 2020 Census data to Texas and

the use of that data for redistricting." *Id.* at 5–6. Finally, Topics 9–10 are:

9.      All communications relating to any of the aforementioned topics between you and any current or former member of the Texas delegation to the U.S.

Congress, the Texas House of Representatives, the Texas Senate, the Texas State Board of Education or the executive branch of Texas, including but not limited to Governor Greg Abbott and Lieutenant Governor Dan Patrick; any current or former staff of the aforementioned individuals, or nay such campaign's current or former staff; or Chris Gober.

10. The policy and process by which NRRT catalogs, retains, preserves, or destroys documents or electronically stored information, or catalogs documents or electronically stored information that has been or will be destroyed, including but not limited to any document or electronically stored information related to any of the aforementioned topics.

*Id.* at 6.

## <u>LEGAL STANDARDS</u>

Both Federal Rules of Civil Procedure 26 and 45 "provide protection for a person subject to a subpoena." *Darling v. Girard*, 2015 U.S. Dist. LEXIS 199481, at *6 (D.D.C. Jul. 20, 2015). Under Rule 45, courts "must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv). Additionally, courts "may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(d)(3)(B)(i).

Rule 26 in turn provides that a court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Also, courts may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." FED. R. CIV. P. 26(c)(1). Such an order could include "forbidding the disclosure or discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," and "requiring that a trade secret or other

7

confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Id.*

Under either Rule 26 or Rule 45, "the person seeking to limit discovery and quash a subpoena bears the burden to show 'good cause' why discovery should be stopped or limited." *Darling*, 2015 U.S. Dist. LEXIS 199481, at *7 (citation omitted). Allegations of a generalized need for a protective order are insufficient, rather movants "must demonstrate specific facts which would justify such an order." *Flanagan v. Wyndham Int'l*, 231 F.R.D. 98, 102 (D.D.C. 2005). The "movant's burden is greater for a motion to quash than if the movant were seeking more limited protection" and "[t]he quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 42 (D.D.C. 2017) (cleaned up) (citations omitted).

With the above considerations in mind, "courts generally employ a balancing test, weighing the burdensomeness to the moving party against the deponent's need for, and the relevance of, the information being sought." *Flanagan*, 231 F.R.D. at 102; *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998) ("[C]ourts have generally employed a balancing test to determine whether good cause has been shown by the party seeking to quash the deposition."). Despite "[t]he general rule in legal actions [] to favor broad disclosure through discovery . . . courts need not tolerate fishing expeditions, discovery abuse, and an inordinate expense involved in overbroad and far-ranging discovery requests." *Buie v. District of Columbia*, 327 F.R.D. 1, 10 (D.D.C. 2018) (cleaned up) (citations omitted). Thus, "[w]hen presented with discovery that imposes a burden that 'outweighs its likely benefit,' courts should exercise their broad discretion to narrowly tailor discovery." *Id.* (quoting *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2017)).

## ARGUMENT

I. **The Court Should Quash the Deposition Subpoena to Adam Kincaid**

    A. <u>The Subpoena to Mr. Kincaid Is Duplicative and Cumulative of the Subpoena to NRRT</u>

Rule 45 imposes a duty on party counsel that when issuing a subpoena to a non-party, the party "must take reasonable steps to avoid imposing undue burden or expense on" the subpoena recipient. FED. R. CIV. P. 45(d)(1). That Rule corresponds with Rule 26, which empowers courts to limit discovery where the discovery proponent seeks information that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). This Court therefore should quash the deposition subpoena to Mr. Kincaid because it is cumulative and duplicative of the deposition subpoena to NRRT.

NRRT designated Mr. Kincaid as its sole representative for MALDEF's 30(b)(6) deposition. Kincaid Decl. ¶ 5. As the Executive Director of NRRT, Mr. Kincaid oversees NRRT's overall operations and is also responsible for its day-to-day functioning. Kincaid Decl. ¶ 3. Moreover, Mr. Kincaid was directly involved in the work performed for The Gober Group during the Texas redistricting. *See* Part I.C. *infra*. As a result, any relevant questions Plaintiffs could ask during a deposition of Mr. Kincaid in his individual capacity necessarily could be covered during the deposition of NRRT, where Mr. Kincaid would be deposed as NRRT's corporate representative. This Court therefore should quash the deposition subpoena to Mr. Kincaid on the grounds that it is cumulative and duplicative of the subpoena to NRRT. *See Darling*, 2015 U.S. Dist. LEXIS 199481, at *9 ("'Thus, courts have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of *Rule 45* and *Rule 26*.'" (citations omitted).

As an additional consideration, discussed further in Part I.C. *infra*, questions to Mr. Kincaid in his individual capacity would implicate privileges and protections held by NRRT. Mr. Kincaid is bound to protect NRRT's privileged, confidential, proprietary, and otherwise protected information, but NRRT would need to assert those claims during a deposition of Mr. Kincaid in his individual capacity. Such a deposition therefore would morph into a pseudo 30(b)(6) deposition to NRRT anyway. As a result, the deposition subpoena to Mr. Kincaid should be quashed as it would needlessly cause confusion and increase litigation costs in a fight over duplicative and cumulative information.

      B.     <u>Mr. Kincaid Does Not Possess Independent Knowledge in His Individual Capacity</u>

Mr. Kincaid's involvement in the Texas redistricting at issue occurred solely through his employment with NRRT. Kincaid Decl. ¶ 7–8. Mr. Kincaid was not engaged by, nor did he perform work for, any person or entity other than NRRT, whether on a paid or unpaid basis, during the relevant Texas redistricting. Kincaid Decl. ¶ 8. Stated differently, Mr. Kincaid's personal knowledge of the Texas redistricting is identical to his knowledge as the Executive Director of NRRT. There are no relevant areas of inquiry covered by the deposition subpoena to Mr. Kincaid that are not also covered by the deposition subpoena to NRRT. As such, the subpoena to Mr. Kincaid is duplicative and cumulative, and therefore should be quashed.

      C.     <u>Any Relevant Information Possessed by Mr. Kincaid Was Gained Through His Employment by NRRT, and Implicates Privileges and Protections Belonging to NRRT</u>

In or around June 2021, The Gober Group engaged NRRT under an Agreement to Provide Legal Support Services in connection with the redistricting in Texas. Kincaid Decl. ¶ 6; Exhibit G (Agreement to Provide Legal Support Services). According to the Scope of Work, "NRRT, under the direction of the Firm, w[ould] provide map-drawing and redistricting consulting services

(collectively, 'Legal Support Services') on behalf of each Texas Delegation Client by assisting with the Firm's legal research, analysis, and work product in anticipation of litigation." Exhibit G (Agreement to Provide Legal Support Services) at 1. The Agreement also contained a Confidentiality and Attorney-Client Privilege provision, which states that

> [i]n connection with the performance of the Legal Support Services, all communications between (i) The Gober Group and the NRRT; (ii) the NRRT and each Texas Delegation Client; and (iii) the NRRT and any attorney, agent, or employee acting on behalf of a Texas Delegation Client's behalf, shall be regarded as confidential and made solely for the purpose of assisting counsel and giving legal advice to the Texas Delegation Client. ***As such, it is our expectation that such communications shall be covered by the attorney-client privilege, and the NRRT shall be responsible for protecting such privilege. The NRRT shall not disclose to anyone, without the Firm's written permission, the nature or content of such communications, or any other non-public information obtained during the performance of the Legal Support Services.***

*Id.* at 1–2 (emphasis added). Although Mr. Kincaid is bound by this Agreement in the scope of his employment at NRRT, he would not be able to appropriately protect the privilege during a deposition in his individual capacity. That would fall to NRRT, as "NRRT shall be responsible for protecting such privilege" under the Agreement. *Id.* at 2. As mentioned above, these hurdles effectively transform Mr. Kincaid's deposition into the deposition of NRRT, and the resultant burden to Mr. Kincaid is therefore untenable. That is especially true given the additional privilege and confidentiality concerns discussed in Part IV *infra*.

At bottom, the result of holding separate depositions is increased cost for decreased clarity. NRRT is the more appropriate source from which to obtain relevant information, and deposing Mr. Kincaid in his individual capacity is therefore unduly burdensome. *See Darling*, 2015 U.S. Dist. LEXIS 199481, at *8–9 ("[T]he D.C. Circuit 'has admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to . . . quash[] pursuant to *Rule 45*, reminding us to consider 'whether the discovery sought is obtainable from some other

source that is more convenient, less burdensome, or less expensive.'" (citation omitted)). Moreover, NRRT is in the best position to resolve any disputes regarding privileged or otherwise protected information. Consequently, the Court should quash the deposition subpoena to Mr. Kincaid.

**II.     In the Alternative, the Court Should Limit the Scope of Mr. Kincaid's Deposition**

If the Court decides not to quash the deposition subpoena to Mr. Kincaid, then Movants ask that the scope of his deposition be limited to the Topics provided in MALDEF's 30(b)(6) notice to NRRT. *See* Exhibit B (Deposition Subpoena to NRRT) at 5–6. By providing those Topics to NRRT, MALDEF has already identified the areas of inquiry that are relevant to its claims. Given that Mr. Kincaid's personal knowledge of the Texas redistricting occurred solely within his employment by NRRT, there is no basis to believe that other, broader topics to Mr. Kincaid would be relevant. Thus, limiting the scope of the subpoena to those Topics will not harm Plaintiffs, and it will protect Mr. Kincaid from the possibility of "annoyance, embarrassment, [and] oppression." *See*. Fed. R. Civ. P. 26(c)(1). Given Mr. Kincaid's previous employment and his value to Republican redistricting efforts, there is a significant risk that Plaintiffs will attempt to delve into irrelevant matters in an effort to malign him.

For instance, Mr. Kincaid previously served as the Redistricting Coordinator for the National Republican Congressional Committee. Kincaid Decl. ¶ 10. Additionally, outside of his employment at NRRT, Mr. Kincaid may have been involved in redistricting efforts in states other than Texas in this past redistricting cycle. *See id.* ¶ 9. Inquiries into such topics are irrelevant to the claims in *LULAC v. Abbott*. Moreover, it is possible these types of questions would be designed to improperly seek information that could be relevant to other redistricting cases outside of Texas. *See Darling*, 2015 U.S. Dist. LEXIS 199481, at *12 ("'A court should[,]' however, 'deny a

discovery request when its purpose . . . is to gather information for use in proceedings other than the pending suit . . . .'" (quoting *Westmorland v. CBS, Inc.*, 584 F. Supp. 1206, 1213 (D.D.C. 1984), *rev'd on other grounds*, 770 F.2d 1168 (D.C. Cir. 1985)). This Court therefore should limit Mr. Kincaid's deposition, if required, to the 30(b)(6) Topics provided to NRRT. *See* Fed. R. Civ. P. 26(c)(1) (courts may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" and that may include "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery of certain matters").

### III.   The Court Should Prohibit the Deposition of Mr. Kincaid and/or NRRT until after Privilege Disputes with The Gober Group Are Resolved.

The Gober Group engaged NRRT under an Agreement to Provide Legal Support Services in connection with the Texas redistricting at issue. Kincaid Decl. ¶ 6; Exhibit G (Agreement to Provide Legal Support Services). That agreement specifies that "all communications between (i) The Gober Group and the NRRT; (ii) the NRRT and each Texas Delegation Client; and (iii) the NRRT and any attorney, agent, or employee acting on behalf of a Texas Delegation Client's behalf, shall be regarded as confidential and made solely for the purpose of assisting counsel and giving legal advice to the Texas Delegation Client." Exhibit G (Agreement to Provide Legal Support Services) at 1–2. Moreover, it is the Gober Group's "expectation that such communications shall be covered by the attorney-client privilege, and the NRRT shall be responsible for protecting such privilege." *Id.* at 2.

Movants understand that Mr. Gober is being deposed on July 12, 2022, and this Agreement will be raised during his deposition. To the extent that there are disputes about the effectiveness of the Agreement, the scope of the attorney-client privilege, or any other disagreement involving the relationship between The Gober Group and NRRT, Movants ask that those issues be resolved

13

before a deposition of Mr. Kincaid, if required, or NRRT is allowed to proceed.[5] Although NRRT is contractually obligated to protect the privilege, and Mr. Kincaid in the scope of his employment at NRRT is bound to protect it, The Gober Group is the proper party to litigate those disputes. Movants therefore request that this Court prohibit Mr. Kincaid's and/or NRRT's depositions until any disputes over The Gober Group's assertions of privilege are resolved.

## IV.    The Court Should Limit the Scope of NRRT's Deposition

This Court should limit the scope of MALDEF's 30(b)(6) Topics to the extent they are overbroad, to the extent they seek confidential, proprietary, or otherwise trade secret information, and to the extent they infringe upon NRRT's First Amendment rights. NRRT was established in September 2017 to act as a hub for the coordination and collaboration of 2020 redistricting efforts for the Republican Party. Kincaid Decl. ¶ 9. To that end, NRRT provided advice, litigation support, data collection, and data analysis in many states throughout the 2020 redistricting cycle. *Id.* As written, certain Topics may be read to include questioning into NRRT's broader activities and strategies outside of Texas. Movants therefore request that this Court limit the Topics to only allow inquiry into subjects specifically involving Texas redistricting.

A subpoena is facially overbroad when it seeks information that is not relevant to the claims or defenses in the case. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22–24 (D.D.C. 2005); *Hardrick v. Legal Serv.s Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983 ("Thus, discovery should be tailored to the issues involved in the particular case."); *Singetary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (stating that a subpoena is overbroad when it

---

[5] Topic 9 in the 30(b)(6) notice to NRRT includes "[a]ll communications relating to any of the aforementioned topics between you and . . . Chris Gober." Exhibit B (Deposition Subpoena to NRRT) at 6. As such, a privilege dispute between Movants and MALDEF will become imminent if it is not resolved prior to the deposition.

"does not limit the [information] requested to t[hat] containing subject matter relevant to the underlying action"). Courts have also held that using terms such as "regarding" or "pertaining to" make a subpoena overly broad on its face. That is because "[t]he use of such omnibus phrases as 'regarding' or 'pertaining to' requires the answer party to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Stewart v. Mitchell Transp.*, 2002 U.S. Dist. LEXIS 12958, at *12–13 (D. Kan. July 11, 2002).

As an example, Topic 2 focuses on "[r]esearch, evaluation, or analysis conducted by NRRT ***related to*** the characteristics (demographic, political, or otherwise) of voters in Texas or voters moved into or out of any district for Texas House of Representatives, Texas Senate, Texas State Board of Education or Texas seats in the U.S. House of Representatives in any redistricting proposals seen by NRRT between January 1, 2021 and October 25, 2021." Exhibit B (Deposition Subpoena to NRRT) at 5 (emphasis added). The use of "related to" arguably negates the tailoring of the remaining Topic, as it hypothetically could be read to include information only tangentially related to Texas. Movants therefore request that this Court prohibit such overbroad interpretations and limit the Topics to information directly impacting the Texas redistricting.

Relatedly, to the extent MALDEF argues that communications and activities within the broader NRRT organization outside of Texas are somehow relevant in *LULAC v. Abbott*, Movants believe that such information is protected under the First Amendment to the U.S. Constitution or is protected from disclosure under the trade secret protections of Federal Rules of Civil Procedure 26 and 45.

To assert the First Amendment privilege, Movants must make a *prima facie* case that disclosure arguably could infringe upon their First Amendment rights. *See Black Panther Party v. Smith*, 661 F.2d 1243 ,1267–68 (D.C. Cir. 1981), *cert. granted and vacated as moot*, 458 U.S. 118

(1982). The burden in demonstrating a *prima facie* case of infringement is light. *Id.*; *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989). Once Movants satisfy this threshold showing then the burden shifts. This Court then must "carefully examine[]" the need for disclosure. *Black Panther Party*, 661 F.2d at 1268. MALDEF would then need to show that the information sought goes to "the heart of the matter," meaning that the information sought is "crucial" to their case. *Id.* (internal quotation marks omitted). MALDEF would need to "describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity." *Id.* This high burden is necessary, because if the information is not "crucial" then there is no compelling need to infringe upon Movants' constitutional rights. Regardless, any disclosure must be kept to a minimum. *Id.*

Additionally, MALDEF would have to show that it has exhausted every reasonable alternative avenue of obtaining the information sought. *Id.* In the same vein, if a less intrusive means of obtaining the information exists, then MALDEF must pursue those means. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). Only if MALDEF satisfies those elements may the Court undertake the required balancing of the threat to the First Amendment rights at stake with the need for the information. *See id.*; *see also Black Panther Party*, 661 F.2d at 1267.

Communications within NRRT and between NRRT and the Republican Party, its state affiliates, and other aligned entities and individuals are firmly within the scope of the privilege. *See AFL-CIO v. FEC*, 33 F.3d 168, 171, 176–78 (D.D.C. 2003). Inquiry into these types of communications will have a detrimental effect on the association as well as its future redistricting work. *See Kincaid* Decl. ¶ 11. Consequently, Movants can establish *prima facie* First Amendment harm since they would have to "drastically alter" how NRRT communicates in the future, and thus would be "less willing to engage" in similar activity going forward. *Perry*, 591 F.3d at 1163.

16

Moreover, such communications and information at the national level or within other states are not "highly relevant" to the claims in *LULAC v. Abbott*. *See Tree of Life Christian, Sch. V. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205 at *8–9 (S.D. Ohio Mar. 12, 2012). In fact, this type of information has no bearing on the intent or the actions of Defendants. As a result, Movants request that this Court limit the Topics by prohibiting inquiries into NRRT's broader operations and associations, as they are protected by the First Amendment privilege.

In a similar vein, "[i]f a court determines that the subpoena requests [trade secret] information, the burden shifts to the party seeking the information to show that obtaining the information is both relevant and necessary." *Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5, 7 (D.D.C. 2006) (citation omitted). Then, "[i]f the burden is satisfied, [] the court must balance the two competing interests and determine what aspect of the subpoena, if any, will be enforced." *Id.* (citation omitted); FED. R. CIV. P. 45(d)(3)(B)(i) (courts "may, on motion quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information"); FED. R. CIV. P. 26(c)(1) (courts may "issue an order to protect a party or person" by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

Like the First Amendment privilege context, to the extent MALDEF argues that communications and activities within the broader NRRT organization outside of Texas are somehow relevant in *LULAC v. Abbott*, Movants believe that the interest in protecting NRRT's proprietary, confidential, or otherwise trade secret information vastly outweighs any tangential relevance to the Texas redistricting. Movants therefore ask this Court to limit the Topics by

prohibiting questioning into NRRT's broader operations, as they are irrelevant and risk improperly revealing information protected under Rule 26 and Rule 45.

## **CONCLUSION**

For the aforementioned reasons, this Court should quash the subpoena to Mr. Kincaid, or, in the alternative, this Court should issue a protective order limiting the topics of Mr. Kincaid's deposition to those specified in MALDEF's 30(b)(6) topics provided to NRRT—and to the extent modified by any order of this Court. Additionally, this Court should limit the 30(b)(6) topics to prevent improper inquiry into privileged and otherwise protected information, and prohibit noticing either deposition, if required, until any disputes over The Gober Group's assertions of privilege are resolved.

Respectfully submitted,

DATED: July 12, 2022

/s/ Jason Torchinsky
Jason Torchinsky (D.C. Bar No. 976033)
jtorchinsky@holtzmanvogel.com
John J. Cycon
jcycon@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Phone: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Non-Parties the National*
*Republican Redistricting Trust and Adam*
*Kincaid*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was emailed to the Clerk of the Court at DCD_CMECF@dcd.uscourts.gov on July 12, 2022. Plaintiffs' counsel and Defendants' counsel were served electronically on July 12, 2022.

/s/ Jason Torchinsky
Jason Torchinsky (D.C. Bar No. 976033)
jtorchinsky@holtzmanvogel.com
John J. Cycon
jcycon@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Phone: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Non-Parties the National Republican*
*Redistricting Trust and Adam Kincaid*