UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* Subpoenas to ADAM KINCAID and THE NATIONAL REPUBLICAN REDISTRICTING TRUST | Civil Action No. 22-mc-67 (JEB) (RMM) |
| THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> Defendants | *Underlying Action*: <br> 21-cv-259-DCG-JES-JVB (W.D. Tex.) |

**MEMORANDUM OPINION**

    The National Republican Redistricting Trust (NRRT) and its president and executive director, Adam Kincaid, consulted with Texas officials during the 2021 congressional redistricting process. Believing that the state maps that resulted from this process discriminated against Latino voters, the United States, along with the League of United Latin American Citizens, individual voters, and advocacy organizations (collectively, "LULAC Plaintiffs"), filed suit in the Western District of Texas against Governor Greg Abbott and other government officials. As part of the discovery process there, LULAC Plaintiffs served Kincaid and NRRT with deposition subpoenas to question them about their involvement with Texas's 2021 redistricting process.

    Kincaid and NRRT then brought this miscellaneous action here, which seeks to quash the subpoenas. This Court referred the matter to Magistrate Judge Robin Meriweather, who recommended denying the relief sought. As this Court agrees, it will adopt the Report and

1

Recommendation in full and deny the Motion to Quash.

**I.     Background**

After Texas enacted its 2021 congressional maps, LULAC Plaintiffs and the United States sued, alleging that the maps intentionally discriminated against Latino voters. See ECF No. 20 (R&R) at 1–2. NRRT and Kincaid "provided map-drawing and redistricting consulting services to Texas officials via a law firm, The Gober Group." Id. at 2. LULAC Plaintiffs thus served Kincaid and NRRT with deposition subpoenas. See id.

In resisting the subpoenas, Kincaid and NRRT made four requests for relief in the action filed here. First, they moved to quash the subpoena to Kincaid on the grounds that his testimony would duplicate NRRT's and implicate privileges belonging to NRRT. See ECF No. 1 (Mot.) at 9–12. They moved, in the alternative, for a protective order limiting the scope of his deposition to the Rule 30(b)(6) topics provided to NRRT. See id. at 12–13. They also moved for a protective order limiting the scope of NRRT's deposition topics on the basis that the topics provided are overbroad, implicate trade secrets, and violate the First Amendment. See id. at 14–18. Finally, they requested that the Court "prohibit Mr. Kincaid's and/or NRRT's depositions until any disputes over The Gober Group's assertions of privilege are resolved." Id. at 13–14. The United States and LULAC Plaintiffs opposed the Motions. See ECF Nos. 6 (USA Opp.); 7 (LULAC Opp.).

This Court referred the matter to Magistrate Judge Meriweather on July 19, 2022. See ECF No. 2. In her Report and Recommendation, filed on August 9, 2023, she recommended that the Court deny all four requests for relief. See R&R at 18–19. Kincaid and NRRT timely filed objections on August 23, 2023, specifically objecting to her recommendation that this Court deny their request for a protective order for NRRT's testimony. See ECF No. 21 (Objs.).

**II.     Legal Standard**

Federal Rule of Civil Procedure 72 governs a district court's review of a magistrate judge's disposition.  See Fed. R. Civ. P. 72(b)(3).  A district judge "must determine de novo any part of the . . . disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Id.  When objecting to a magistrate judge's report and recommendation, "the parties may not present new issues or arguments to the district judge; rather, only those issues that the parties have raised in their objections . . . will be reviewed by this court."  Sciacca v. FBI, 23 F. Supp. 3d 17, 27 (D.D.C. 2014) (quoting M.O. v. Dist. of Columbia, 20 F. Supp. 3d 31, 37 (D.D.C. 2013)).  All other issues or arguments will be reviewed "only for clear error."  Id. (quoting Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist., 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009)).

Under Federal Rule of Civil Procedure 26, a court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Among other things, a protective order may forbid inquiry into certain matters or limit the scope of discovery.  Id.  "The moving party 'bears the burden of making the showing of good cause contemplated by the rule.'"  Smith v. Yeager, 322 F.R.D. 96, 99 (D.D.C. 2017) (quoting Alexander v. FBI, 186 F.R.D. 71, 75 (D.D.C. 1998)).  To do so, the movant must articulate "a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  Id. (quoting Alexander, 186 F.R.D. at 75).  Indeed, the movant "has a heavy burden of showing extraordinary circumstances based on specific facts that would justify an order."  Abraha v. Colonial Parking, Inc., 311 F. Supp. 3d 237, 238

(quoting Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd., 296 F.R.D. 3, 6 (D.D.C. 2013)). When assessing the appropriateness of a protective order, courts must exercise their discretion and "weigh[] the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial." Smith, 322 F.R.D. at 99 (quoting Doe v. Dist. of Columbia, 230 F.R.D. 47, 50 (D.D.C. 2005)).

### III. Analysis

In their Objections, Kincaid and NRRT raise two challenges to Magistrate Judge Meriweather's recommendation to deny NRRT's requested protective order regarding the topics of its deposition. See Objs. at 10–14. First, they contend that the Report and Recommendation erred in holding that the deposition topics were not overbroad. See id. at 11–12 & nn.10–12. Second, they assert that Magistrate Judge Meriweather mistakenly concluded that LULAC Plaintiffs' interest in obtaining information from NRRT's deposition outweighed NRRT's First Amendment interest. See id. at 10–14. Kincaid and NRRT filed an additional objection in their Replies to the United States's and LULAC Plaintiffs' Responses, seeking again to postpone depositions given the privilege disputes over Chris Gober's and The Gober Group's testimony. See ECF Nos. 28 (Reply to USA) at 2–4; 29 (Reply to LULAC) at 2–4. The Court will address each objection in turn.

#### A. Overbreadth Objection

Under Rule 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevance "has been construed broadly" by courts to include "any matter that bears on, or that reasonably could lead to other matter that could bear on[,] any party's claim or defense." Prasad v. George Washington Univ., 325 F.R.D. 1, 3 (D.D.C. 2018) (internal quotation marks omitted) (quoting United States ex rel. Shamesh v.

CA, Inc., 314 F.R.D. 1, 8 (D.D.C. 2016)).  While broad, the relevance standard "is not without bite," as courts will not allow "exploration of matter which does not presently appear germane on the theory that it might conceivably become so."  Id. (quoting Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997)) (cleaned up).

Movants ask this Court to "limit the scope of . . . [LULAC Plaintiffs'] 30(b)(6) Topics to the extent they are overbroad."  Mot. at 14; Objs. at 11 n.10.  They assert that "certain Topics may be read to include questioning into NRRT's broader activities and strategies outside of Texas," and they request that this Court issue a protective order to "only allow inquiry into subjects specifically involving Texas redistricting."  Mot. at 14.  In her Report and Recommendation, Magistrate Judge Meriweather recommended that the Court deny Movants a protective order because they "ha[d] not demonstrated that the NRRT Subpoena [was] overbroad."  R&R at 10.  Topic 2, identified by Movants as an example of an overly broad topic, "clearly limit[ed] its scope to certain categories of research, evaluation, and analysis concerning Texas voters."  Id.  Magistrate Judge Meriweather proceeded to find that all other topics — with one exception not relevant here — in NRRT's Subpoena "pertain[ed] to Texas on their face and [were] not overbroad."  Id.  Movants nonetheless object, arguing that the "deposition topics . . . are potentially much broader than they are described" in the Report and Recommendation.  See Objs. at 11.  In their Objections, Movants target Topics 2, 3, and 9 as the most overbroad.  See id. at 11–12 & nn.11–12.  The Court addresses each below.

1. *Topic 2*

Topic 2 provides an example of the language to which Movants object.  It focuses on the "[r]esearch, evaluation or analysis conducted by NRRT related to the characteristics . . . of voters

5

in Texas . . . in any redistricting proposals . . . between January 1, 2021 and October 25, 2021." ECF No. 1-4 (NRRT Subpoena), ¶ 2 (emphasis added). In their initial Motion, Movants took issue with LULAC Plaintiffs' 30(b)(6) topics like this one to the extent they included broad, all-encompassing language such as "regarding" or "related to." Mot. at 15.

      To begin, this information clearly bears on Plaintiffs' allegations that Texas impermissibly considered ethnic characteristics in discriminating "purposefully and in effect" against Latino voters. See R&R at 3 (quoting ECF No. 7-2 (Third Am. Compl.), ¶ 7). NRRT is wrong, furthermore, to assert that the "related to" language could "hypothetically . . . be read to include information only tangentially related to Texas." Mot. at 15. Any inquiries under Topic 2 would not only need to relate to NRRT's research on Texas, but also more specifically relate to NRRT's research on "the characteristics of . . . voters in Texas." NRRT Subpoena, ¶ 2.

      Movants rely on a District of Kansas opinion, Stewart v. Mitchell Transport, 2002 WL 1558210 (D. Kan. July 11, 2002), to support their proposition that courts have "held that using terms such as 'regarding' or 'pertaining to' make a subpoena overly broad." Mot. at 15. While that might indeed be correct in some instances, overbreadth depends on the language of each request. Here, any objective reader would find the language sufficiently targeted. See Prasad, 325 F.R.D. at 4–6 (finding that deposition topic inquiring about "[p]olicies, procedures, and practices during the [r]elevant [p]eriod related to training on sexual assault . . . or other Title IX-related matters" was not overly broad).

      Movants reference only Topic 2 (and Topic 9, discussed below) as illustrative of the overly broad nature of the "related to" language and do not target LULAC Plaintiffs' other 30(b)(6) topics. See Objs. at 11–12 & n.11. This Court, therefore, declines to sift through and examine the scope of the rest.

2. *Topics 3 and 9*

Movants next assert that two other Rule 30(b)(6) topics — Topics 3 and 9 — are overly broad in a different sense. Topic 3 concerns "[t]he discussion, conception, development, or execution of any strategy or plan to alter the boundaries" of any of Texas's statewide districts "between January 1, 2021 and October 25, 2021." NRRT Subpoena, ¶ 3. Topic 9 covers "[a]ll communication relating to any of the aforementioned topics between [NRRT] and any current or former member of the Texas delegation to the U.S. Congress, the Texas House of Representatives, the Texas Senate, the Texas State Board of Education, or the executive branch of Texas[;] . . . any current or former staff of the aforementioned officials; any campaign for elected office for any of the aforementioned individuals, or any such campaign's current or former staff; or Chris Gober." Id., ¶ 9.

Movants maintain that when read together, Topics 3 and 9 could allow LULAC Plaintiffs to "ask questions about discussions between the Republican Party and NRRT about national redistricting goals, as former staff to the individuals and their campaigns likely work for the Republican Party." Objs. at 12. Movants fear, therefore, that these topics would include "questioning into NRRT's broader activities and strategies outside of Texas." Mot. at 14. While Topic 9 reaches NRRT's communications with individuals who may now work for the Republican Party, it limits the scope of communications that can be sought to those "relating to any of the aforementioned topics." NRRT Subpoena, ¶ 9. Such topics mean Topics 1–8, which all focus on the development, creation, and purpose of Texas's redistricting boundaries. The Court, accordingly, finds that Topics 3 and 9 are not overly broad.

7

B. First Amendment Objection

Movants next contend that a protective order is necessary to safeguard their First Amendment rights. This Court uses a two-step process to evaluate First Amendment challenges to depositions. First, the movant must demonstrate that it has a cognizable First Amendment interest. If the movant surpasses this threshold, then the Court balances the movant's interest against the other party's interest in obtaining information. See Black Panther Party v. Smith, 661 F.2d 1243, 1266 (D.C. Cir. 1981) ("[T]he plaintiff's First Amendment claim should be measured against the defendant's need for the information sought.") (citing NAACP v. Alabama, 357 U.S. 449, 463 (1958)), vacated as moot sub nom. Moore v. Black Panther Party, 458 U.S. 1118 (1982).

When conducting this balancing inquiry, "[c]ourts must consider (1) whether the requested information goes to the 'heart of the lawsuit' and (2) whether the party seeking the discovery sought the information through alternative sources or otherwise made reasonable attempts to obtain the information elsewhere." In re Subpoenas Served on Am. Acad. of Pediatrics, 2023 WL 2351729, at *1 (D.D.C. Mar. 3, 2023); see Wyoming v. U.S. Dep't of Agriculture, 208 F.R.D. 449, 455 (D.D.C. 2002); Int'l Union v. Nat'l Right to Work Legal Def. & Ed. Found., Inc., 590 F.2d 1139, 1152 (D.C. Cir. 1978). In addition, "First Amendment interests 'ordinarily grow stronger as the danger to rights of expression and association increases,' such as when the fear of harassment is substantial." In re Subpoenas, 2023 WL 2351729, at *1 (quoting Black Panther Party, 661 F.2d at 1267).

At the threshold step of this inquiry, Magistrate Judge Meriweather correctly concluded that NRRT had a cognizable First Amendment interest. See R&R at 11–14. It is well established that political groups like NRRT have First Amendment associational interests

8

implicated by compelled disclosure of their activities. See, e.g., AFL-CIO v. FEC, 333 F.3d 168, 175 (D.C. Cir. 2003) ("[C]ompelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation.").

The Court next separately considers the information's relevance, any alternative sources of the information, and any heightened danger to First Amendment rights.

1. *Relevance of Information*

The Court agrees with Magistrate Judge Meriweather that the information sought by LULAC Plaintiffs "goes to the heart of the matter." R&R at 14 (quotation omitted). She concluded that the subpoenaed information is "highly relevant" because "testimony from NRRT about its internal and external communications and activities may shed light on any potential discriminatory motives" in the map-drawing process. See id. The mindset of the mapmaker is highly relevant to the question of whether invidious discrimination tainted the process. See Perez v. Texas, 891 F. Supp. 2d 808, 833 n.94 (W.D. Tex. 2012) (noting that "the actual mapdrawer['s] . . . state of mind and decisionmaking appears to be the most relevant evidence concerning the extent to which race played a role in determining district lines"); see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.").

Movants concede that some of NRRT's internal communications related to Texas redistricting are not shielded by the First Amendment, see Objs. at 10, but argue that "communications between NRRT and the Republican Party, its state affiliates, and other aligned entities and individuals that lack an appreciable connection to the Texas redistricting" should be shielded. Id. at 12. The Court agrees that communications that have zero connection to the

9

Texas redistricting would not be relevant, but it declines to rule out the relevance of communications that discuss Texas along with other states or as part of a national plan or strategy. Indeed, when another court addressed Kincaid's similar motion for a protective order amid Ohio redistricting litigation, it noted that "simply because certain conversations or mental impressions encompassed efforts involving both Ohio and other states together does not mean they are not appropriate for exploration at this deposition." Ohio A. Philip Randolph Inst. v. Householder, 2019 WL 3288170, at *7 (S.D. Ohio Jan. 30, 2019). Relatedly, as the United States points out, divergence from national redistricting practices could itself be evidence of discriminatory intent in Texas. See ECF No. 25 (USA Resp.) at 8 (citing Arlington Heights, 429 U.S. at 267). Conversations between NRRT and other entities about national redistricting efforts may, at least at times, remain relevant to the Texas redistricting issues at the heart of this case.

        2. *Alternative Sources of Information*

The Court further agrees with Magistrate Judge Meriweather that the next factor in the balancing inquiry — "whether the party seeking the discovery sought the information through alternative sources or otherwise made reasonable attempts to obtain the information elsewhere" — weighs against NRRT. See In re Subpoenas, 2023 WL 2351729, at *1. Citing NRRT's "distinct role in the Texas redistricting," the Report determined that "there 'are no plausible alternative sources'" to NRRT's testimony, a fact that "weighs in favor of disclosure." R&R at 15 (quoting In re Subpoenas, 2023 WL 2351729, at *2).

Movants object to this characterization of NRRT's testimony as unique and argue that "most, if not all," of the questions to be asked of NRRT could be asked of Gober, Managing Partner of The Gober Group, who has already been deposed. See Objs. at 12–13. But Gober is not a plausible alternative source of key pieces of information. Such information includes

NRRT's potential communications with Members of Congress or Texas state legislators. See ECF No. 25-1 (Gober Dep.) at 58:19–22 ("I cannot testify on behalf of Mr. Kincaid or NRRT as to what communications [with Members of Congress] may have been made."); id. at 59:2–5 ("I can't testify as to communications [with Texas state legislators] that I am not aware of . . . ."). Such information also includes Kincaid's potential use of certain types of data and software while creating the maps, which Gober was not privy to. See, e.g., id. at 255:1–4 ("I do not recall if [income data] was data that was available to us. . . . That may be a question for Mr. Kincaid."); see also USA Resp. at 9–10 (collecting similar statements). Indeed, the fact that Gober has already been deposed but was unable to provide important information supports the determination that Plaintiffs have already "sought the information through alternative sources" to NRRT. See In re Subpoenas, 2023 WL 2351729, at *1.

3. *Danger to First Amendment Rights*

Finally, Magistrate Judge Meriweather was correct that NRRT's First Amendment interests were not strengthened by any increased "danger to rights of expression and association[,] . . . such as when the fear of harassment is substantial." Id. (quoting Black Panther Party, 661 F.2d at 1267). In particular, her Report noted that NRRT had "not demonstrated that disclosure of the information will subject them to harassment or chill their expression or association as contemplated by the First Amendment." R&R at 17.

In its objections, instead of demonstrating how such harassment or chilling might occur, NRRT asserts that being forced to identify the groups it associates with in order to justify a protective order "would deter full and honest discussions between NRRT and other aligned organizations and individuals," thus undermining its First Amendment associational rights. See Objs. at 13–14. The Court finds that Movants have failed to show that the mere identification of

such associations, without more, would burden their associational rights. Movants do not claim, for example, that such identification would lead to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." NAACP, 357 U.S. at 462. Nor do they claim that, post-disclosure, it might become "difficult . . . to recruit future personnel." AFL-CIO, 333 F.3d at 176. Instead, Movants stick with "conclusory speculations" about future harm. See R&R at 16. Because the objection does not present new information indicating a heightened risk of harassment or chilled associational rights, the Court agrees with the Report and Recommendation's conclusion here.

In sum, Magistrate Judge Meriweather was correct to conclude that NRRT's cognizable First Amendment interest was outweighed by LULAC Plaintiffs' interest in the information. The information sought is highly relevant to the case, NRRT is the only plausible source of that information, and NRRT has not demonstrated a risk of harassment or chilling that would strengthen its First Amendment interest. The Court, accordingly, finds that the First Amendment interests here do not justify a protective order.

    C.  Discovery-Dispute Objection

In their initial Motion, Movants asked the Court to postpone the depositions of Kincaid and NRRT "until any disputes over The Gober Group's assertions of privilege are resolved." Mot. at 14. Magistrate Judge Meriweather recommended that the Court deny this request for two reasons. First, Gober's deposition had already taken place, making "[t]he thrust of Movants' argument . . . moot." R&R at 19. Second, to the extent any privilege issues were not resolved, "the Federal Rules provide a mechanism to prevent the disclosure of privileged information during depositions of Mr. Kincaid and NRRT." Id. Movants initially did "not object" to this

recommendation but stated that they "remain wary of the complications that such 'lingering privilege issues' are likely to cause during the depositions." Objs. at 9 n.7 (citing id. at 6–8).

Now, in their Replies, Movants attempt to revive their request to postpone the depositions of NRRT and Kincaid until the privilege-related discovery disputes in the underlying case are resolved. See Reply to USA at 2–4; Reply to LULAC at 2–4. Movants assert that they were previously unaware of the ongoing nature of the privilege-related discovery dispute because the pleading regarding Gober and The Gober Group was filed under seal, and neither the United States nor LULAC Plaintiffs brought it to the attention of Movants. See Reply to USA at 3; Reply to LULAC at 3. Had the United States or LULAC Plaintiffs informed Magistrate Judge Meriweather about the pending motion to enforce subpoenas, Movants argue, "then it would have been highly unlikely that the Magistrate Judge would have determined that the issue was 'moot.'" Reply to USA at 3; Reply to LULAC at 3.

To begin, as noted above, Magistrate Judge Meriweather's denial of Movants' request to postpone the depositions was premised on two reasons, only one of which was mootness. She also emphasized that "[t]o the extent that any lingering privilege issues [had] not been resolved," Movants could assert privilege during the depositions of Kincaid and NRRT. See R&R at 19. Movants were aware of the possibility that "lingering privilege issues" could persist and should have raised this objection earlier. See Objs. at 9 n.7.

Magistrate Judge Meriweather's recommendation, however, was correct in any case. There is no error in her recommendation that Movants utilize the mechanisms of the Federal Rules to prevent the disclosure of privileged information during the depositions of Kincaid and NRRT, a rationale that Movants leave unchallenged. Movants concede that "NRRT is contractually obligated to protect the privilege, and Mr. Kincaid in the scope of his employment

at NRRT is bound to protect it." Mot. at 14. Magistrate Judge Meriweather, therefore, was correct to conclude that Kincaid's counsel, who also represents NRRT, "will be equipped to raise objections to protect any privileges that may arise." R&R at 8.

## IV.     Conclusion

Because Magistrate Judge Meriweather correctly concluded that NRRT's deposition topics were not overbroad, that NRRT's First Amendment interest was outweighed by LULAC Plaintiffs' interest in obtaining information, and that the depositions need not await the resolution of the privilege-related discovery dispute, this Court will adopt the Report and Recommendation in full. A separate Order denying the Motion to Quash will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: October 4, 2023